# EXHIBIT "A"

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

CAPITAL FLIP, LLC,

      Plaintiff,

    v.

AMERICAN MODERN SELECT
INSURANCE COMPANY,

      Defendant.

CIVIL DIVISION

No.:

**COMPLAINT**

Filed on Behalf of Plaintiff:
CAPITAL FLIP, LLC

Counsel of Record for These Parties:

Brad N. Sommer, Esquire
PA ID No.: 87312

Robert S. Richman, Esquire
PA ID No.: 88673

SOMMER LAW GROUP, P.C.
6 Market Square
Pittsburgh, PA 15222
Phone: (412) 471-1266
Fax: (412) 471-3175

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

CAPITAL FLIP, LLC,                                CIVIL DIVISION

       Plaintiff,                              No.:

    v.

AMERICAN MODERN SELECT
INSURANCE COMPANY,

       Defendant.

### NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within thirty (30) days after this Complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

Pennsylvania Lawyer Referral Service
(800) 692-7375
Pennsylvania Bar Association
100 South St., P.O. Box 186, Harrisburg 17108

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

CAPITAL FLIP, LLC,                                  CIVIL DIVISION

        Plaintiff,                                  No.:

    v.

AMERICAN MODERN SELECT
INSURANCE COMPANY,

        Defendant.

### COMPLAINT IN CIVIL ACTION

**AND NOW**, comes the Plaintiff, Capital Flip, LLC, by and through its attorneys, Sommer Law Group, P.C., and hereby files the following Complaint in Civil Action, averring as follows:

### GENERAL ALLEGATIONS

1.   Plaintiff, Capital Flip, LLC (hereinafter "Plaintiff"), is a Pennsylvania corporation with its principal place of business at 6 Market Square, Pittsburgh, Pennsylvania 15222.

2.   Defendant, American Modern Select Insurance Company (hereinafter "Defendant"), is an Ohio corporation with its principal place of business at 700 Midland Boulevard, Amelia, Ohio 45201.

3.   Plaintiff is the owner of the property located at 1419 Iroquois Drive, Pittsburgh, Pennsylvania 15205 (hereinafter "Property").

4.   The subject Property is insured by Defendant through Plaintiff's Dwelling Policy: Policy No. 0850048537190 (hereinafter "Policy"). Attached hereto as Exhibit "A."

5.   On or about April 24, 2018, the Plaintiff suffered major damage to the Subject Premises resulting from raccoons that had gained entrance to the Property.

6.   On or about May 6, 2018, Defendant issues a letter to Plaintiff denying coverage of the claim. See Exhibit "B" Denial Letter.

7.   Defendant denied the claim, citing animals/animals damaging the dwelling and stating that this type of damage was not included under the Perils Insured Against section of Plaintiff's policy. Page 3; Dwelling Property Basic Form.

8.   Under the Policy, Plaintiff's claim is specifically insured and covered under Perils Insured Against, Page 4 Section 10, which covers Vandalism and Malicious Mischief.

## COUNT I – BREACH OF CONTRACT

9.   Plaintiff, Capital Flip, LLC, hereby incorporates by reference Paragraphs 1 through 8 of this Complaint as though fully set forth at length herein.

10. Capital Flip, LLC and American Modern Select Insurance Company entered into an insurance policy agreement (hereinafter "Policy") to provide coverage for the Property.

11. The property, located at 1419 Iroquois Drive, Pittsburgh, Pennsylvania, 15205 is covered under the policy.

12. The Policy created a contractual duty, by American Modern Select Insurance Company, to provide Capital Flip, LLC with property coverage in conformity with the specifications of the contract.

13. Specifically, the Policy provided coverage under the section entitled "PERILS INSURED AGAINST." Page 3; Dwelling Property Basic Form

14. Section 10 of "PERILS INSURED AGAINST," located on Page provides coverage for "Vandalism or Malicious Mischief." Page 4; Dwelling Property Basic Form

15. The policy fails to define both "vandalism" and "malicious mischief," creating an issue of ambiguity as to what both terms encompass in relation to this Policy's coverage.

16. Additionally, the General Exclusions section of the Policy, which explicitly states all events not covered by the Plaintiff's Policy, does not contain a provision detailing animals or damage caused by animals. Pages 4-5; Dwelling Property Basic Form

17. On or about April 24, 2018, the Plaintiff suffered extensive damage to the Property.

18. The extensive damage was caused as a result of numerous raccoons gaining entrance to the interior of the Property.

19. The Policy, under the section entitled "PERILS INSURED AGAINST," provides coverage for damage to property caused by vandalism or malicious mischief. Page 4, Section 10; Dwelling Basic Property Form

20. Further, the Policy provides coverage under any other applicable provision of the Policy.

21. Plaintiff suffered compensable damage to its Property when numerous raccoons gained entrance to it and Plaintiff reported such damage to the Defendant, in a timely manner, in accordance with its obligation to do so under the Policy.

22. Defendant contends that animals cannot form intent and therefore can't cause malicious mischief; however, recent studies in animal science show just the opposite.

23. The Policy as a whole provided coverage against the loss suffered by the Plaintiff.

24. On or about May 6, 2018, Defendant issued a letter to Plaintiff denying coverage of the claim. See Exhibit "B" Denial Letter.

25. The letter of denial issued to the Plaintiff by the Defendant stated:

> Since your loss was the result of an animal or animals damaging the dwelling and this is not covered in the list of perils, as stated above, there is no coverage under your policy for the loss. Therefore, your claim is respectfully denied.

26. The Defendant also issued to the Plaintiff a second denial letter on September 7, 2018

reinforcing the Defendant's denial. Attached hereto as Exhibit "C" is a true and correct copy of the second denial.

27. The Policy is ambiguous as it fails to define both vandalism and malicious mischief.

28. All conditions precedent to the recovery under the insurance contract have been satisfied, and as a result, Defendant is in breach of contract with Plaintiff due to:

   a. Failure to fully pay Plaintiff's claim; and/or

   b. Arbitrary failure to pay Plaintiff's claim; and/or

   c. Unreasonable delay in payment of Plaintiff's claim; and/or

   d. Denial of payment due and owing under the Policy in complete disregard of Plaintiff's need for compensation for various expenses; and/or

   e. Failure to process and to pay Plaintiff's claim in the absence of a colorable justification or excuse; and/or

   f. Misconduct which forced Plaintiff to institute litigation so as to obtain consideration of its claim.

   **WHEREFORE**, Plaintiff Capital Flip, LLC, demands judgment against Defendant, American Modern Select Insurance Company, to recover the requested damages pursuant to its valid policy of insurance, loss of rent, in an amount in excess of the arbitration limits of the court of Common Pleas of Allegheny County.

## COUNT II – INSURANCE BAD FAITH

29. Plaintiff, Capital Flip, LLC, hereby incorporated by reference Paragraphs 1 through 28 of its complaint as though fully set forth at length herein.

30. Subsequent to Plaintiff suffering damage from the raccoons, Plaintiff filed with

Defendant a timely damage claim in accordance with its obligation to do so pursuant to the insurance policy.

31. Defendant's letter, dated May 6, 2018, referred Plaintiff to the portion of the policy entitled "Perils Insured Against" which, in part, provides for inclusion for property damage caused by "vandalism or malicious mischief."

32. Plaintiff suffered compensable damage to its property when numerous raccoons gained entrance to it and Plaintiff reported such damage to the Defendant, in a timely manner, in accordance with its obligation to do so under the insurance policy.

33. The Policy, under the section entitled "PERILS INSURED AGAINST," provides coverage for damage to property caused by vandalism or malicious mischief. Page 4, Section 10; Dwelling Basic Property Form

34. Further, the Policy provides coverage under any other applicable provision of the Policy.

35. Defendant has knowledge that loss occurred from raccoons gaining entrance to the property, and that the loss was specifically covered under Section 10, yet still cited ambiguous language intentionally and in bad faith to deny coverage.

36. Defendant's conduct violated its fiduciary, contractual, and/or statutory duties by acting in bad faith in violation of 42 Pa.C.S.A. §8371.

37. Defendant is in breach of contract with Plaintiff due to:

    a.   Failure to fully pay Plaintiff's claim; and/or

    b.   Arbitrary failure to pay Plaintiff's claim; and/or

    c.   Unreasonable delay in payment of Plaintiff's claim; and/or

    d.   Denial of payment due and owing under the Policy in complete disregard of Plaintiff's need for compensation for various expenses; and/or

   e.  Failure to process and to pay Plaintiff's claim in the absence of a colorable
       justification or excuse; and/or

   f.  Misconduct which forced Plaintiff to institute litigation so as to obtain
       consideration of its claim.

38. Further, Defendant's failure to provide coverage for the claim coupled with its bad faith in denying coverage for the claim is contrary both to established Pennsylvania law and the stated purpose of the underlying insurance policy itself.

39. As a direct and proximate cause of Defendant's bad faith, Plaintiff has been denied the benefits to which it is entitled, and, as a result, has expended time, money, and effort in attempting to collect these benefits.

40. Therefore, Plaintiff requests:

   a.  Delay Damages, amounting to any interest on Plaintiff's claim from the date the
       claim was made of due or payable, in an amount equal to the prime rate of interest
       plus three percent (3%);

   b.  Attorneys' fees and court costs;

   c.  Punitive damages; and

   d.  Any and all further damages as deemed just and proper by the Court.

WHEREFORE, Plaintiff Capital Flip, LLC, demands judgment against Defendant, American Modern Select Insurance Company, to recover the requested damages pursuant to its valid policy of insurance, and loss of rent, in an amount in excess of the arbitration limits of the Court of Common Pleas of Allegheny County.

Respectfully Submitted,

SOMMER LAW GROUP, P.C.

_____

BRAD N. SOMMER, ESQUIRE

## VERIFICATION

The undersigned hereby verifies that the statements made in the within pleading are true and correct to the best of their knowledge, information, and belief, and are made subject to the penalties of 18 Pa.C.S.A. §4906 relating to unsworn falsification to authorities.


Date: November 29, 2018

Brad N. Sommer

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Plaintiff's counsel
Signature: _____
Name: Brad N. Sommer, Esq.
Attorney No.: 87312

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via First Class Mail, upon the following individual(s) listed below, on this 29th day of November 2018 as follows:

American Modern Select Insurance Company
7000 Midland Boulevard
Amelia, Ohio 45102

BRAD N. SOMMER, ESQUIRE



POL                              DECLARATION PAGE          5182

**AMERICAN MODERN SELECT INSURANCE COMPANY**

American MODERN™          DWELLING POLICY DECLARATIONS               POLICY NUMBER: 0850048537190

**NAMED INSURED:**
CAPITAL FLIP LLC BRAD SOMMER
6 MARKET SQ
PITTSBURGH PA 15222

**AGENT 039595:**
WN TUSCANO AGENCY INC
PO BOX 1027
GREENSBURG PA 15601

986950
**MAIL TO:** N085 039595 0048537190 37 WEB
CAPITAL FLIP LLC BRAD SOMMER
6 MARKET SQ
PITTSBURGH PA 15222

**BROKER 986950:**
JOHN JOSEPH SUPPA
2520 MATTERHORN DR
WEXFORD PA 15090
PHONE: (412) 238-8200

**POLICY PERIOD:**
**FROM:** MAR 16, 2018      **TO:** MAR 16, 2019
12:01 A.M. STANDARD TIME
AT INSURED PROPERTY ADDRESS

**INSURED PROPERTY:**
1410 IROQUOIS DR
PITTSBURGH PA 15205-5204

**LIENHOLDER 1:**
NONE

| UNIT | OCCUPANCY | CONSTRUCTION TYPE | NO. FAMILIES | NO. STORIES | PROTECTION CLASS | TERR |
|------|-----------|-------------------|--------------|-------------|------------------|------|
| 1 | VACANT | FRAME | ONE FAMILY | TWO STORY | 05 | 65 |

THIS POLICY PROVIDES ONLY THE FOLLOWING COVERAGES FOR THIS UNIT:

| SECTION | ITEM | COVERAGE | LIMIT | PREMIUM |
|---------|------|----------|-------|---------|
| 1 | COVERAGE A | DWELLING (DP-1),FIRE & EXT. COV. | $55,000 | $571.00 |
| 1 | DEDUCTIBLE | SUBJECT TO ALL PERILS | $1,000 | |
| 1 | OPT'L COVG | VANDALISM OR MALICIOUS MISCHIEF | | $39.00 |
| 1 | DEDUCTIBLE | VANDALISM OR MALICIOUS MISCHIEF | $500 | |
| 2 | | PREMISES LIABILITY - EA. OCC. | $500,000 | $135.00 |
| 2 | | PREMISES MED PAY EA. PERSON | $5,000 | |
| 2 | | PREMISES MED PAY EA. OCC. | $25,000 | |
| 1 | | RENOVATION AMT INCL IN COVG A | $50,000 | $28.00 |
| | | BUILDER'S RISK ENDT WILL ATTACH | | |
| 1 | SETTLEMENT | DWELLING ACTUAL CASH VALUE | | |

MINIMUM WRITTEN AND/OR EARNED MAY APPLY     TOTAL PREMIUM          $773.00

****THIS POLICY DOES NOT INCLUDE FLOOD COVERAGE.****
****THIS POLICY DOES NOT INCLUDE EARTH MOVEMENT AND EARTHQUAKE COVERAGE.****
IF YOU CANCEL THIS POLICY EARLY, A MINIMUM EARNED PREMIUM OF $100 MAY APPLY.

**EXHIBIT**
A

(CONTINUED ON REVERSE SIDE)

ENDORSEMENT FORMS APPLICABLE TO THIS POLICY
| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| S1X37 | 05/05; | D1N85 | 05/17; | FDN37 | 04/17; | IN150 | 06/12; | IN614 | 04/09; |
| PAN37 | 05/17; | PLS37 | 01/10; | SD137 | 06/07; | 73258 | 12/03; | DBR37 | 02/12; |
| DPC37 | 03/12; | PLU37 | 12/07; | S1237 | 02/12; | S1937 | 05/05; | S1W37 | 05/05; |
| SDT37 | 05/05; | | | | | | | | |

BILL TO INSURED
DATE PREPARED: MAR 16, 2018
FORM NO. 0110-4269 (05/92)                    INSURED'S COPY

**INSURED NAME:** CAPITAL FLIP LLC BRAD SOMMER                **POLICY NUMBER:**  08500485371

**ADDITIONAL INSURED:**                          **LIENHOLDER 2:**
NONE                                              NONE

PLEASE REVIEW THE INFORMATION CONTAINED IN THIS POLICY
IF ANY INFORMATION IS INCORRECT, PLEASE CONTACT CUSTOMER SERVICE:

**JOHN JOSEPH SUPPA**
**PHONE: (412) 238-8200**

**CLAIMS TELEPHONE NUMBER: 1-800-543-2644**
**HOURS: 8:00 A.M. - 7:00 P.M. EST/EDT**

AMERICAN MODERN INSURANCE GROUP
MAILING ADDRESS                          MAIN ADMINISTRATIVE OFFICE
POST OFFICE BOX 5323                       7000 MIDLAND BOULEVARD
CINCINNATI, OHIO 45201-5323                 AMELIA, OHIO 45102-2607

5183

HERE ARE YOUR INSURANCE IDENTIFICATION CARDS.
PLEASE DETACH AND SEPARATE CARDS AS NEEDED.

AMERICAN MODERN SELECT INSURANCE COMPANY
P.O. BOX 5323
CINCINNATI OH 45201-5323
1-800-543-2644

**POLICY HOLDER INFORMATION CARD**

| | |
|---|---|
| **EFFECTIVE:** | MAR. 16, 2018 |
| **EXPIRATION:** | MAR. 16, 2019 |
| **POLICY NUMBER:** | 0850048537190 |
| **INSURED:** | CAPITAL FLIP LLC BRAD SOMMER |

AMERICAN MODERN SELECT INSURANCE COMPANY
P.O. BOX 5323
CINCINNATI OH 45201-5323
1-800-543-2644

**POLICY HOLDER INFORMATION CARD**

| | |
|---|---|
| **EFFECTIVE:** | MAR. 16, 2018 |
| **EXPIRATION:** | MAR. 16, 2019 |
| **POLICY NUMBER:** | 0850048537190 |
| **INSURED:** | CAPITAL FLIP LLC BRAD SOMMER |

(DETACH HERE)

PLEASE REMOVE THESE SIDE STRIPS FIRST

PLEASE REMOVE THESE SIDE STRIPS FIRST

5184


American
**MODERN**™

# DWELLING PROPERTY
# BASIC FORM -
# PENNSYLVANIA



## AMERICAN MODERN HOME INSURANCE COMPANY

AMELIA, OHIO

MAIN ADMINISTRATIVE OFFICE
MAILING ADDRESS
P.O. BOX 5323
CINCINNATI, OHIO 45201-5323
1-800-543-2644

**AMERICAN MODERN HOME INSURANCE COMPANY**

A Stock Insurance Company

**AMELIA, OHIO**

**IMPORTANT**

This policy has been written in readable language to help you understand its terms.

**PLEASE READ YOUR POLICY CAREFULLY**

For service, information or questions on this policy, contact your agent or our Home Office. Our phone number is 1-800-543-2644.

**TABLE OF CONTENTS**

|  | Beginning on Page |
|---|---|
| Definitions | 1 |
| Coverages | 1 |
| Coverage A - Dwelling | 1 |
| Coverage B - Other Structures | 1 |
| Coverage C - Personal Property | 1-2 |
| Coverage D - Fair Rental Value | 2 |
| Other Coverages | 2-3 |
| Perils Insured Against | 3 |
| General Exclusions | 4 |
| Conditions | 5-8 |

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1988, 1999

SD137 (06/07)

5185

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the Named Insured shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

1. "Actual cash value" means the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. "Actual cash value" applies to valuation of covered property regardless of whether that property has sustained partial or total loss or damage.

   The "actual cash value" of the lost or damaged property may be significantly less than its replacement cost.

2. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed. This exclusion applies whether or not the property has been physically damaged.

## COVERAGES

This insurance applies to the Described Location, Coverages for which a Limit of Liability is shown and **PERILS INSURED AGAINST** for which a premium is stated.

## COVERAGE A - DWELLING

1. We cover:

   a. the dwelling on the Described Location shown in the Declarations, used principally for dwelling purposes, including structures attached to the dwelling;

   b. materials and supplies located on or next to the Described Location used to construct, alter or repair the dwelling or other structures on the Described Location; and

   c. if not otherwise covered in this policy, building equipment and outdoor equipment used for the service of and located on the Described Location.

2. This coverage does not apply to land, including land on which the dwelling is located.

## COVERAGE B - OTHER STRUCTURES

1. We cover other structures on the Described Location, set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. This coverage does not apply to land, including land on which the other structures are located.

3. We do not cover other structures:

   a. used in whole or in part for commercial, manufacturing or farming purposes; or

   b. rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

## COVERAGE C - PERSONAL PROPERTY

We cover personal property, usual to the occupancy as a dwelling and owned or used by you or members of your family residing with you while it is on the Described Location. At your request, we will cover personal property owned by a guest or servant while the property is on the Described Location.

**Property Not Covered.** We do not cover:

1. accounts, bank notes, bills, bullion, coins, currency, deeds, evidences of debt, gold other than goldware, letters of credit, manuscripts, medals, money, notes other than bank notes, passports, personal records, platinum, securities, silver other than silverware, tickets and stamps;

2. animals, birds or fish;

3. aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

4. motor vehicles or all other motorized land conveyances. This includes:

   a. their equipment and accessories; or

   b. any device or instrument for the transmitting, recording, receiving or reproduction of sound or pictures which is operated by power from the electrical system of motor vehicles or all other motorized land conveyances, including:

      (1) accessories or antennas; or

      (2) tapes, wires, records, discs or other media for use with any such device or instrument;

   while in or upon the vehicle or conveyance.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1988, 1999

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

    a. used solely to service the Described Location; or

    b. designed for assisting the handicapped;

5. watercraft, other than rowboats and canoes;

6. data, including data stored in:

    a. books of account, drawings or other paper records; or

    b. electronic data processing tapes, wires, records, discs or other software media.

    However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market.

7. credit cards or fund transfer cards.

If you remove personal property from the Described Location to a newly acquired principal residence, the **COVERAGE C** limit of liability will apply at each residence for the 30 days immediately after you begin to move the property there. This time period will not extend beyond the termination of this policy. Our liability is limited to the proportion of the limit of liability that the value at each residence bears to the total value of all personal property covered by this policy.

## COVERAGE D - FAIR RENTAL VALUE

1. If a loss to property described in **COVERAGE A, B** or **C** by a **PERIL INSURED AGAINST** under this policy makes that part of the Described Location rented to others or held for rental by you unfit for its normal use, we cover its:

    **Fair Rental Value,** meaning the fair rental value of that part of the described Location rented to others or held for rental by you less any expenses that do not continue while that part of the Described Location rented or held for rental is not fit to live in.

2. Payment will be for the shortest time required to repair or replace that part of the Described Location rented or held for rental.

3. If a civil authority prohibits you from use of the Described Location as a result of direct damage to a neighboring location by a **PERIL INSURED AGAINST** in this policy, we cover the Fair Rental Value loss for no more than two weeks.

4. The periods of time referenced above are not limited by the expiration of this policy.

5. We do not cover loss or expense due to cancellation of a lease or agreement.

## OTHER COVERAGES

1. **Other Structures.**

    a. You may use up to 10% of the **COVERAGE A** limit of liability for loss by a **PERIL INSURED AGAINST** to other structures described in **COVERAGE B.**

    b. Payment under this coverage reduces the **COVERAGE A** limit of liability by the amount paid for the same loss.

2. **Debris Removal.**

    a. We will pay your reasonable expense for the removal of:

        (1) debris of covered property if a **PERIL INSURED AGAINST** causes the loss; or

        (2) ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

    b. Debris removal expense is included in the limit of liability applying to the damaged property.

3. **Improvements, Alterations and Additions.**

    a. If you are a tenant of the Described Location, you may use up to 10% of the **COVERAGE C** limit of liability for loss by a **PERIL INSURED AGAINST** to improvements, alterations and addition, made or acquired at your expense, to that part of the Described Location used only by you.

    b. Payment under this coverage reduces the **COVERAGE C** limit of liability by the amount paid for the same loss.

4. **World-Wide Coverage.**

    a. You may use up to 10% of the **COVERAGE C** limit of liability for loss by a **PERIL INSURED AGAINST** to property covered under **COVERAGE C** while anywhere in the world. This coverage does not apply to property of guests or servants or to rowboats or canoes.

    b. Payment under this coverage reduces the **COVERAGE C** limit of liability by the amount paid for the same loss.

5. **Rental Value.**

    a. You may use up to 10% of the **COVERAGE A** limit of liability for loss of fair rental value as described in **COVERAGE D.** We will pay only 1/12 of this 10% for each month the rented part of the Described Location is unfit for its normal use.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1988, 1999

5186

**b.** Payment under this coverage reduces the **COVERAGE A** limit of liability by the amount paid for the same loss.

**6. Reasonable Repairs.**

**a.** In the event that covered property is damaged by an applicable **PERIL INSURED AGAINST**, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable **PERIL INSURED AGAINST**.

**b.** This coverage:

(1) does not increase the limit of liability that applies to the covered property;

(2) does not relieve you of your duties, in case of a loss to covered property, as set forth in **CONDITION 4. b.**

**7. Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a **PERIL INSURED AGAINST** and for no more than 5 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

**8. Fire Department Service Charge.**

**a.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a **PERIL INSURED AGAINST**.

**b.** We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

**c.** This coverage is additional insurance. No deductible applies to this coverage.

### PERILS INSURED AGAINST

Unless the loss is excluded in the **GENERAL EXCLUSIONS**, we insure for direct physical loss to the property covered caused by:

**1. Fire or lightning.**

**2. a. Internal Explosion**, meaning explosion occurring in the dwelling or other structure covered on the Described Location or in a structure containing personal property covered.

**b.** Explosion does not mean:

(1) electric arcing;

(2) breakage of water pipes; or

(3) breakage or operation of pressure relief devices.

**c.** This peril does not include loss by explosion of steam boilers, or steam pipes, if owned or leased by you or operated under your control.

When a Premium for Extended Coverage is shown in the Declarations, Perils **3.** through **9.** are made part of Perils Insured Against.

**3. Windstorm or hail.** This peril does not include loss:

**a.** to the inside of a building or the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening; or

**b.** to the following property when outside of the building:

(1) awnings, signs, radio or television antennas or aerials including lead-in wiring, masts or towers; or

(2) canoes and rowboats.

**4. Explosion.**

**a.** This peril does not include loss by explosion of steam boilers or steam pipes, if owned or leased by you or operated under your control.

**b.** Explosion does not mean:

(1) electric arcing;

(2) breakage of water pipes; or

(3) breakage or operation of pressure relief devices.

**c.** This peril replaces Peril **2.**

**5. Riot or civil commotion.**

**6. Aircraft**, including self-propelled missiles and spacecraft.

**7. Vehicles.**

This peril does not include loss:

**a.** caused by a vehicle owned or operated by you or a resident of the Described Location; or

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1988, 1999

b.   caused by any vehicle to fences, driveways and walks.

8.   a.   **Smoke**, meaning sudden and accidental damage from smoke.

b.   This peril does not include loss caused by smoke from fireplaces or from agricultural smudging or industrial operations.

9.   **Volcanic Eruption**, other than loss caused by earthquake, land shock waves or tremors

When a Premium for Vandalism or Malicious Mischief is shown in the Declarations, the following is made part of **PERILS INSURED AGAINST**.

10.  **Vandalism or malicious mischief**. This peril does not include loss:

a.   to glass or safety glazing material constituting a part of the building other than glass building blocks;

b.   by pilferage, theft, burglary or larceny, but we will be liable for damage to the building covered caused by burglars; or

c.   to property on the Described Location if the dwelling has been vacant for more than 30 consecutive days immediately before the loss.  A dwelling being constructed is not considered vacant.

## GENERAL EXCLUSIONS

A.   We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

1.   **Ordinance Or Law**, meaning any ordinance or law:

a.   requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris;

b.   the requirements of which result in a loss in value to property; or

c.   requiring you or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

2.   **Earth Movement**, meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth

sinking, rising or shifting; unless direct loss by:

a.   fire;

b.   explosion;

ensues and then we will pay only for the ensuing loss.

3.   a.   **Water Damage**, meaning:

(1)  flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(2)  water which backs up through sewers or drains or which overflows from a sump; or

(3)  water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

b.   Direct loss by fire or explosion resulting from water damage is covered.

4.   **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the Described Location. But if the failure of power or other utility service results in a loss, from a **PERIL INSURED AGAINST** on the Described Location, we will pay for the loss or damage caused by that **PERIL INSURED AGAINST**.

5.   **Neglect**, meaning your neglect to use all reasonable means to save and preserve property at and after the time of a loss.

6.   **War**, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

7.   **Nuclear Hazard**, to the extent set forth in the Nuclear Hazard Clause of the Conditions.

8.   **Intentional Loss**, meaning:

a.   any loss arising out of any act an insured commits or conspires to commit with the intent to cause a loss.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1988, 1999

5187

In the event of such loss, no insured is entitled to coverage, even insureds who did not commit or conspire to commit the act causing the loss.

b. However, this exclusion will not apply to deny payment to the insured who did not cooperate in or contribute to the creation of the loss if the loss:

(1) is otherwise covered property under Coverage **A, B,** or **C** of the policy; and

(2) arises out of abuse to that innocent insured by another insured.

With respect to this provisions, abuse means:

(a) abuse as defined in the Pennsylvania Protection From Abuse Act; or

(b) attempting to cause or intentionally, knowingly or recklessly causing damage to covered property so as to intimidate or attempt to control the behavior of another person.

If we pay a claim under this provision **8.b.**, our payment to the insured is limited to that insured's insurable interest in the property. In no event will we pay more than the Limit of Liability.

B. We do not cover loss to lawns, plants, shrubs or trees outside of buildings.

## CONDITIONS

1. **Policy Period.** This policy applies only to loss which occurs during the policy period.

2. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

a. for an amount greater than the interest of a person insured under this policy; or

b. for more than the applicable limit of liability.

3. **Concealment or Fraud.** With respect to all persons insured under this policy, we provide no coverage for loss if, whether before, during or after a loss, one or more persons insured under this policy have:

a. intentionally concealed or misrepresented

any material fact or circumstance;

b. engaged in fraudulent conduct; or

c. made false statements;

relating to this insurance.

4. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

a. give prompt notice to us or our agent;

b. (1) protect the property from further damage;

(2) make reasonable and necessary repairs to protect the property; and

(3) keep an accurate record of repair expenses;

c. prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

d. as often as we reasonably require:

(1) show the damaged property;

(2) provide us with records and documents we request and permit us to make copies; and

(3) submit to examination under oath, while not in the presence of any other named insured, and sign the same;

e. send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) the time and cause of loss;

(2) your interest and that of all others in the property involved and all liens on the property;

(3) other insurance which may cover the loss;

(4) changes in title or occupancy of the property during the term of the policy;

(5) specifications of damaged buildings and detailed repair estimates;

(6) the inventory of damaged personal property described in **4.c.** ;

(7) receipts for additional living expenses incurred and records that support the fair rental value loss.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1988, 1999

5. **Loss Settlement**. Covered property losses are settled at actual cash value at the time of loss but not more than the amount required to repair or replace the damaged property.

6. **Loss to a Pair or Set**. In case of loss to a pair or set we may elect to:

   a. repair or replace any part to restore the pair or set to its value before the loss; or

   b. pay the difference between actual cash value of the property before and after the loss.

7. **Glass Replacement**. Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

8. **Appraisal**.

   a. If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss.   In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other.

   b. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the Described Location is located.

   c. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire.   A decision agreed to by any two will set the amount of loss.

   d. Each party will:

      (1) pay its own appraiser; and

      (2) bear the other expenses of the appraisal and umpire equally.

9. **Other Insurance**. If property covered by this policy is also covered by other fire insurance, we will pay only the proportion of a loss caused by any peril insured against under this policy that the limit of liability applying under this policy bears to the total amount of fire insurance covering the property.

10. **Subrogation**. You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.   If an assignment is sought, the person insured must sign and deliver all related papers and cooperate with us.

11. **Suit Against Us**. No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

12. **Our Option**. We may repair or replace any part the damaged property with like property if we give you written notice of our intention to do so within 15 working days after we receive your signed, sworn proof of loss.

13. **Loss Payment**. We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

   a. reach an agreement with you;

   b. there is an entry of a final judgment; or

   c. there is a filing of an appraisal award with us.

14. **Abandonment of Property**. We need not accept any property abandoned by you.

15. **Mortgage Clause**.

   a. The word "mortgagee" includes trustee.

   b. If a mortgagee is named in this policy, any loss payable under **COVERAGE A** or **B** will be paid to the mortgagee and you, as interests appear.   If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

   c. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

      (1) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

      (2) pays any premium due under this policy on demand if you have neglected to pay the premium; and

      (3) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so.   Policy conditions relating to **APPRAISAL** , **SUIT AGAINST US** and **LOSS PAYMENT** apply to the mortgagee.

   d. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1988, 1999

S188

e.  If we pay the mortgagee for any loss and deny payment to you:

(1)  we are subrogated to all rights of the mortgagee granted under the mortgage on the property; or

(2)  at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

f.  Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**16. No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**17. Cancellation.**

a.  You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

b.  We may cancel this policy subject to the provisions of this condition by notifying you in writing of the date cancellation takes effect and the reason for cancellation. This cancellation notice will be delivered to or mailed to you at the mailing address known to us; if mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

(1)  When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 30 days before the date cancellation takes effect.

(2)  When this policy has been in effect for 60 days or more or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons:

(a)  You have made a material misrepresentation that affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 30 days before the effective date of cancellation.

(b)  You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 30 days

before the effective date of cancellation.

(c)  A condition, fact or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 30 days before the effective date of cancellation.

c.  If this policy is cancelled, we will send you any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If you cancel, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

d.  If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**18. Nonrenewal.** If any reason(s)stated under Item **17., Cancellation,** Subparagraph b.(2) applies(y), we may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice, stating the specific reasons for nonrenewal, at least 60 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**19. Increase in Premium.** If we increase your renewal premium, we will mail or deliver to you:

a.  notice of our intent to increase the premium at least 60 days before the effective date of the premium increase; and

b.  an estimate of the increase at least 30 days before the effective date of the premium increase. Any notice of nonrenewal or renewal premium increase will be mailed or delivered to you at the last mailing address known to us. If notice is mailed, it will be by registered or first-class mail. Proof of mailing will be sufficient proof of notice.

**20. Liberalization Clause.**

a.  If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1988, 1999

prior to or during the policy period stated in the Declarations.

b.   This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

**21. Waiver or Change of Policy Provisions** . A waiver or change of a provision of this policy must be in writing by us to be valid.  Our request for an appraisal or examination will not waive any of our rights.

**22.   Assignment.** Assignment of this policy will not be valid unless we give our written consent.

**23.   Death.** If you die, we insure:

a.   your legal representatives but only with respect to the property of the deceased covered under the policy at the time of death;

b.   with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

c.   Insurance under this policy will continue as provided in **(1)** or **(2)** below, whichever is later:

(1)   for 180 days after your death regardless of the policy period shown in the Declarations, unless your property, covered under the policy at the time of your death, is sold prior to that date; or

(2)   until the end of the policy period shown in the Declarations, unless your property, covered under the policy at the time of your death, is sold prior to that date.

Coverage during the period of time after your death is subject to all the provisions of this policy including payment of any premium due for the policy period shown in the Declarations and any extension of that period.

**24.   Nuclear Hazard Clause.**

a.   "Nuclear Hazard" means any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

b.   Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

c.   This policy does not apply to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**25. Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery.  At your option, the property will be returned to or retained by you or it will become our property.  If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**26.   Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

President

Secretary

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1988, 1999

5189

**American Modern Insurance Group**

# PRIVACY NOTICE AND NOTICE OF INFORMATION PRACTICES

The companies of the American Modern Insurance Group ("American Modern") respect you and your right to privacy. We value your trust. So, we want you to know our policies and procedures that protect the privacy of your Nonpublic Personal Information (NPI). We also want you to know your rights regarding NPI that we receive about you. Thirdly, we want you to know how we gather NPI about you and how we protect its privacy.

In the course of doing business, we receive NPI related to insurance products and services we provide. These products and services are primarily for personal, family and household purposes. We currently do not share your NPI with any third parties not affiliated with American Modern except as required or permitted by law. We have no intention of doing so without proper authorization from you.

The terms of this Notice apply to individuals who inquire about or obtain insurance from one of the American Modern companies. We will send current policyholders a copy of our most recent Privacy Notice and Notice of Information Practices. We will do so at least annually. We will also send you a Notice if we make changes affecting your rights under our privacy policy. We reserve the right to modify or supplement our privacy policy at any time in accordance with applicable law. This Notice applies to current and former customers of American Modern. This Notice does not in any way affect your insurance coverage. You can find this Notice online on our Website at www.amig.com.

## I.   WHAT KIND OF INFORMATION WE COLLECT ABOUT YOU

We get most of our NPI about you directly from insurance applications and other forms that you or your insurance representative provide to us. Some examples of NPI include your name, address, income level, Social Security number and certain other financial information. Often, the NPI you provide to your insurance representative at the time you apply gives us everything we need to evaluate you or your property for insurance purposes. But, there are times when we may need more NPI or may need to verify NPI that you have provided. In those cases, we may obtain NPI from outside sources. We will do so at our own expense.

It is common for an insurance company or other financial services company to contact independent sources. Such sources verify and supplement NPI given on an application for insurance or other financial services products. There are many such independent companies. These are commonly called "consumer reporting agencies". They are in the business of providing independent NPI to insurance companies. We will treat the NPI we receive about you from independent sources according to the terms of this Notice.

You have the right to contact any of the agencies we have used to prepare a report on you. If you wish, please submit your request in writing to the address shown below. Upon our receipt of your written request, we will provide you with the name and address of any agency used to prepare a report on you. Please note that your request must follow the procedures outlined under Sections V. and VII. below.

Once you become a customer of ours, our records on you may contain NPI about our experiences and transactions with you. Such NPI may include coverage, premiums and payment history. It may also include any claims you make under your policy. Any NPI that we collect in connection with a claim will be kept in accordance with this Privacy Notice. We will keep NPI collected by a claims representative and any police or fire report. We may, though, give NPI about claims to one or more insurance support organizations or another insurer. We may do so to underwrite a risk properly. We may also do so to prevent or prosecute fraud, or to detect criminal activity. We may also obtain NPI about you from a report prepared by an insurance support organization. The NPI may be kept by the support organization and provided to other persons.

Each American Modern company may disclose NPI about you to an affiliate regarding its transactions and experiences with you for marketing purposes without obtaining prior authorization. The law does not allow customers to restrict this disclosure. Such NPI may include your payment and claims history. We do not currently share other credit-related NPI about you, except as allowed or required by law.

## II.   WHAT WE DO WITH INFORMATION WE COLLECT ABOUT YOU

We will keep NPI we have about you in our insurance policy or other records. We will refer to and use that NPI in order to issue and service insurance policies and other financial products. We will also use it to settle claims. Generally, we will not disclose NPI about you in our records to any organization not affiliated with American Modern without your prior permission. But, we may, as allowed by law, share NPI about you contained in our records with certain persons or organizations that are not affiliated with American Modern such as:

* your insurance representative;

* medical professionals;

* other insurance companies, agents or consumer reporting agencies as NPI is needed in connection with any insurance application, policy or claim involving you;

* our affiliated companies;

* persons who represent you in a fiduciary capacity, including your attorney or trustee, or who have a legal interest in your insurance policy;

* persons or organizations who use the NPI to perform a business, professional or insurance function for us;

* persons or organizations that conduct research, including actuarial or underwriting studies, provided that no individual NPI may be identified in any research study report;

* adjusters, appraisers, auditors, investigators and attorneys;

* persons or organizations that perform services, functions or marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements; and

* a court, state insurance department or other government agency pursuant to a summons, court order, search warrant, subpoena, or as otherwise required by law or regulation.

### Health Information

Except as allowed or required by law, we will not use or share any personally identifiable health information about you, other than as follows. We will use such information to underwrite or administer your policy, claim or account, or in a manner as previously disclosed to you by us when we collected it. The above will not apply if we have obtained your written consent to share information.

## III.   RESPONSIBILITIES OF OTHER PARTIES

This Notice applies only to the American Modern companies. It does not necessarily reflect the privacy standards of other financial institutions or independent agents with whom you do business. Their privacy policies and information practices govern how they collect, use and disclose NPI about you. As described above, we may disclose your nonpublic personal financial or health information to third parties. When we do so, we will require them to use such NPI only for its intended purpose in accordance with applicable law.

## IV.   WHO HAS ACCESS TO YOUR INFORMATION IN OUR RECORDS

At present, American Modern uses a system of passwords and other physical, electronic and procedural safeguards to protect your NPI. They are designed to protect confidentiality, limit access, and prohibit unlawful disclosure of your NPI. We train our employees about the policies and rights provided under this Notice. We also train them on the importance of protecting customer NPI. Employees who violate our policy in any way are subject to being disciplined. This could include actions up to and including termination of employment. Also, we evaluate our information security practices relevant to changes in technology. We will do so to determine ways to increase the protections outlined above.

## V.   HOW YOU CAN REVIEW RECORDED INFORMATION WE HAVE ABOUT YOU

### Access to Information

You have the right to review and receive most of the NPI we collect about you. As permitted or required by law, some legal and medical documents will not be provided. To access your NPI, please submit a notarized request to the address shown in Section VII. We will need your complete name, address, policy number, daytime phone number and a copy of your driver's license or other personal identification We will respond to your request within thirty (3 days unless state law requires us to respond earlier. We will let you know the nature and substance of the NPI about you in our files. We will tell you with whom we have shared the information in the last two years. We will identify the source of the information if the source is an institutional one.

### Correction of Information

If you believe your NPI is incorrect, please send a notarized request for correction to the address shown in Section VII. We will need your complete name, address, policy number, daytime phone number and a copy of your driver's license or other personal identification. We will respond to your request within thirty (30) days unless state law requires us to respond earlier.

If we agree with you, we will correct the NPI and notify you of the correction. We will notify any person who may have received the incorrect NPI from us in the past two years if you ask us to contact that person. We will also provide the corrected information to any insurance support organization to which we have provided your NPI within the last seven years.

S190

If we disagree with you, we will tell you we are not going to make the correction.  We will give you the reason(s) for our refusal.  We will also tell you that you may submit a statement to us.  Your statement should include the NPI you believe is incorrect.  It should also include the reason(s) why you disagree with our decision not to correct the NPI in our files.  We will file your statement with the disputed NPI.  We will include your statement any time we disclose the disputed NPI.  We will also give the statement to any person designated by you if we have disclosed the disputed NPI to that person in the past two years.

## VI.   INTERNET, MOBILE APPLICATION AND SOCIAL MEDIA USERS

We may use at our website, amig.com common online tracking technologies like web browser cookies, web beacons or pixels, analytical tools, or other technologies to customize our websites, mobile applications, and social media interactions to enhance your overall customer experience.  These technologies do not collect personally identifiable information about you.  When you visit our website, a message called a cookie is sent from a web server to your computer.  This cookie resides on your computer until your internal browser is turned off and is used to make it easier for you to navigate among different pages of the website.  You can disable cookies in your browser or block by changing the settings in your browser.  Disabling or rejecting cookies may prevent you from using certain website functions and you may have to enter information to take advantage of services.

We partner with third party marketing partners, including Facebook, which use cookies, web beacons, and other storage technologies to collect or receive information from our website as well as elsewhere on the Internet.  Our partners use that information to provide measurement services and target information to provide measurement services and target ads.  To opt-out of ad targeting, please visit the Digital Advertising Alliance's http://www.aboutads.info/choices.

Our website contains hyperlinks to third-party websites on the Internet, which we do not control, are not governed by our privacy practices and policies and for which we are not responsible.  Before you provide information to any of these other websites, you should review their terms of service (or similar legal terms) and their privacy policies so that you know what information is collected by the website and what use or disclosure may be made of information you provide to the website.

## VII.  HOW TO CONTACT US

Once you have read this, if you have any questions about our privacy policy or the NPI kept in our records about you, please write to us at the address shown below:

AMERICAN MODERN INSURANCE GROUP
7000 Midland Boulevard
Amelia,Ohio 45102-2607
Attn: Privacy Compliance Office

The American Modern Insurance Group's Privacy Notice and Notice of Information Practices are provided on behalf of the following companies:

American Modern Property and Casualty Insurance Company
American Modern Insurance Group, Inc.
American Family Home Insurance Company d/b/a in California AFH Insurance Company
American Modern Home Insurance Company d/b/a in California American Modern Insurance Company
American Modern Home Service Company
American Modern Insurance Company of Florida, Inc.
American Modern Lloyds Insurance Company
American Western Home Insurance Company
American Southern Home Insurance Company
American Modern Select Insurance Company
American Modern Surplus Lines Insurance Company
Lloyds Modern Corporation
Marbury Agency, Inc.
Midwest Enterprises, Inc.
The Atlas Insurance Agency, Inc.
Copper Leaf Research

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF THE POLICY.
PLEASE READ IT CAREFULLY.

# DWELLING POLICY
# PREMISES LIABILITY ENDORSEMENT - PENNSYLVANIA

**WE WILL PROVIDE THIS INSURANCE IF "PREMISES LIABILITY" IS SHOWN IN THE DECLARATIONS.**

It is agreed the **CONDITIONS** sections of your Dwelling Policy shall continue to apply unless amended in this endorsement.

## I.   AGREEMENT

We will provide the insurance described in this endorsement in return for the premium and compliance with all applicable provisions of the policy.

## II.   COVERAGES

### A.   Premises Liability

1.   We cover the **insured's** legal liability for **bodily injury** or **property damage** arising out of the ownership, maintenance or use of the **insured premises**. The **bodily injury** or **property damage** must be caused by an **occurrence** during the policy period.

If a claim is made or a suit is brought against any **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, we will:

a.   pay up to our Limit of Liability for the damages for which the **insured** is legally liable; and

b.   provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate.

2.   Our duty to settle or defend ends when the amount we pay for damages equals our Limit of Liability. We will not reimburse you for defense costs or attorney fees incurred by you prior to giving us notice of the accident or **occurrence**.

### B.   Premises Medical Payments

1.   We will pay up to the Limit of Liability all reasonable **medical expense** for **bodily injury** provided:

a.   the **medical expense** is incurred within one year from the date of the accident; and

b.   the **bodily injury** arises out of a condition on the **insured premises** for which you are afforded coverage for **bodily injury** liability.

## III.   LIMITS OF LIABILITY

### A.   Premises Liability

Regardless of the number of:

1.   **insureds;**

5191

2.  claims made; or

3.  persons injured;

our total liability for all damages resulting from any one **occurrence** shall not exceed the Limit of Liability stated in the declarations.

All **bodily injury** and **property damage** resulting from any:

1.  one accident; or

2.  from continuous or repeated exposure to substantially the same general conditions;

shall be considered to be the result of one **occurrence**.

**B.  Premises Medical Payments**

The Limit of Liability shown in the Declarations for each person is our maximum Limit of Liability for all **medical expense** payable for **bodily injury** to one person as the result of one accident.

Subject to this limit for each person, the Limit of Liability shown in the Declarations for each accident is our maximum Limit of Liability for two or more persons injured in any one **occurrence**.

## IV.  EXCLUSIONS

**A.**  This insurance does not apply to **bodily injury** or **property damage**:

1.  arising out of the ownership, maintenance, use, loading or unloading of an:

    a.  aircraft;

    b.  **motor vehicle**;

    c.  motorized bicycle; or

    d.  watercraft;

    owned or operated by, or rented or loaned to any **insured**.

2.  arising out of diseases or sickness that:

    a.  may have been transmitted by you; or

    b.  may have arisen from your activities.

3.  arising out of any sexual act.  This includes, but is not limited to, assault, molestation, abuse, incest or rape.

4.  arising out of your **business** activities.  This does not apply to the rental or holding for rental of the **insured premises**.

5.  arising from:

    a.  nuclear reaction;

    b.  radiation; or

    c.  radioactive contamination.

    This exclusion applies whether such are controlled or uncontrolled.  It also applies to any consequence of these.

73258 12/03

6. arising out of your illegal or criminal acts.

7. due to war, declared or not;

   civil war, or insurrection;

   rebellion or revolution;

   or any consequence thereof.

8. which is expected or intended by any **insured**; or which is the foreseeable result of an act or omission intended by any **insured**.

   This exclusion applies whether or not the **insured** was intoxicated, insane or otherwise impaired if a person without that impairment should have foreseen some type of injury or damage might result.

9. for which any **insured** may be held liable for violation of any law:

   a. pertaining to the distribution of use of any alcoholic beverage; or

   b. by reason of selling, serving or giving any alcoholic beverage;

      (1) to a minor;

      (2) to a person under the influence of alcohol; or

      (3) which causes or contributes to the intoxication of any person.

10. arising out of rendering or failure to render professional services.

11. arising from:

    a. continuous or repeated events; or

    b. exposure to conditions which result directly or indirectly in:

       (1) **bodily injury**; or

       (2) **property damage**;

    as a result of lead poisoning or the existence of lead-based paint at any **insured premises**.

12. arising from or associated in any way with the actual or threatened occurrence of, growth of, release of, transmission of, migration of, dispersal of, decontamination of, remediation of or exposure to **mold**. This includes, but is not limited to **bodily injury** or **property damage**:

    a. arising from or associated in any way with actual or threatened mold at or upon any real property, personal property, product, or any other tangible property of any **insured** or any other person(s) or organization(s) located anywhere in the world;

    b. arising from or associated in any way with any actual or threatened inhalation of, exposure to, absorption or ingestion of, or physical contact with **mold**;

    c. arising from or associated in any way with any testing, monitoring, clean-up, remediation, treatment, removal, or neutralization of **mold**, including any associated costs or expenses; or

    d. arising from or associated in any way with any error or omission in supervision, instructions, recommendations, notices, warnings or advice, given or which should have been given in connection with **mold**.

73258 12/03                                                                Page 3 of 9

5192

B.  In addition this insurance does not apply:

1.  to liability for your share of any loss assessment charged against all members of an association of property owners.

2.  to liability assumed by you except a written lease of the **insured premises**.

3.  to **bodily injury** to you, your partner or employee arising out of or in the course of your or his employment.

    This exclusion also applies to your obligation to indemnify another because of damages arising out of such injury.

4.  to **property damage** to:

    a.  property owned or occupied by or rented to you or your employee;

    b.  property used by you or your employee; or

    c.  property in the care, custody or control of you or your employee;

    d.  premises alienated by you.

5.  with respect to Premises Medical Payments, **bodily injury** to:

    a.  you or any other **insured**;

    b.  a tenant or other person living on the **insured premises**;

    c.  a person at the **insured premises** without permission;

    d.  an employee of the foregoing arising out of the course of his employment; or

    e.  any person participating in an athletic activity.

6.  a.  **bodily injury** to any person eligible to receive any benefits:

        (1)  voluntarily provided; or

        (2)  required to be provided;

    b.  by the **insured** under any:

        (1)  workers' compensation law;

        (2)  non-occupational disability law; or

        (3)  occupational disease law.

7.  to liability arising out of a **landlord-tenant dispute**.

8.  **bodily injury** to you or any other **insured**.

9.  to claims or damages alleging or resulting in punitive or exemplary damages or related defense costs.  It does not apply to statutory fines or other similar types of damages.

C.  **PREMISES LIABILITY** and **PREMISES MEDICAL PAYMENTS** coverages do not apply to:

1.  **bodily injury** arising from the ingestion, inhalation, or absorption of lead in any form.

2. **property damage** arising from any form of lead contamination.

3. any loss, cost or expense arising from any request, demand or order that any **insured** or others:

   a. test for,

   b. monitor,

   c. clean up,

   d. remove,

   e. contain,

   f. treat,

   g. detoxify or neutralize, or

   h. in any way respond to, or assess the effects of,

   lead.

4. any loss, cost, or expense arising from any claim or suit by or on behalf of a governmental authority for damages because of:

   a. testing for,

   b. monitoring,

   c. cleaning up,

   d. removing,

   e. containing,

   f. treating,

   g. detoxifying or neutralizing, or

   h. in any way responding to, or assessing the effects of,

   lead.

## V. POLICY PERIOD

This insurance applies only to accidents which occur during the policy period.

## VI. DEFINITIONS

When used in this endorsement:

1. **We, us** and **our** refers to American Modern Insurance Group.

2. **You, your** or **yours** means each of the following to the extent set forth below:

   a. the named **insured**, and if the named **insured** is an individual, only with respect to the conduct of a **business** which he is the sole proprietor, and the spouse of the named **insured** with respect to the conduct of such a **business**;

5193

b.  if the named **insured** as designated in the declarations is a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

c.  if the named **insured** as designated in the declarations is other than an individual, partnership or joint venture, the organization or corporation so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such.

3.  **Insured** means you and, if an individual, the following residents of your household:

a.  your relatives;

b.  any other person under the age of twenty-one who is in the care of any person named above.

4.  **Insured premises** means the premises designated in the Declarations or the Dwelling Schedule attached to the policy.

5.  **Bodily injury** means bodily harm, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom.

6.  **Property damage** means:

a.  physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom; or

b.  loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an **occurrence** during the policy period.

7.  **Medical expense** means expenses for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services.

8.  **Occurrence** means an accident, including continuous or repeated events or exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended by any **insured**.

9.  **Business** includes trade, profession or occupation.

10.  **Landlord-tenant dispute** means any claim or legal action asserted against or brought against you or any association of which you are a member by any tenant or tenant association.  A **landlord-tenant dispute** must relate to your conduct (or of any such association) regarding the manner in which the **insured premises** is managed, maintained or operated.

11.  **Motor vehicle** means:

a.  a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration;

b.  a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

c.  a snowmobile or other motorized land vehicle owned by any **insured** and designed for recreational use off public roads.  A motorized wheel chair designed for the handicapped is not a **motor vehicle**;

d.  any vehicle while being towed by or carried on a vehicle included in 11.a, 11.b, or 11.c above.

12. **Mold** means any mold, fungi, organic pathogen, bacteria, virus or their spores, scent, or by-products of any type or nature that cause, threaten to cause or are alleged to cause physical damage, deterioration, loss of use, and/or loss of value or marketability, to any tangible property or that can cause, threaten to cause, or are alleged to cause harm of any type to any living organism. This includes, but is not limited to, any type of **mold** that is harmful or potentially harmful to the health or welfare of persons (such as Stachybotrys and others), and/or that is damaging or potentially damaging to tangible property (including wet or dry rot, mildew and others).

## VII. SUPPLEMENTARY PAYMENTS

A. We will pay in addition to our Limit of Liability:

1. expenses incurred by us;

2. all costs taxed against you in any suit we defend;

3. all interest on the entire amount of any judgment in any suit we defend. We will pay only that which occurs after the judgment and before we have paid our part of the judgment which does not exceed our Limit of Liability;

4. prejudgement interest awarded against the **insured** on that part of the judgement we pay. If we make an offer to pay the applicable Limit of Liability, we will not pay any prejudgement interest based on that period of time after the offer;

5. premiums on appeal bonds required in any such suit. We will not apply for or furnish any bond;

6. premiums on bonds to release attachments in any such suit. This applies only to suits for an amount not in excess of our Limit of Liability. We will not apply for or furnish any bond.

7. reasonable expenses incurred by you at our request to assist us in the defense of any claim or suit. This includes actual loss of earnings not to exceed $25.00 per day.

## VIII. CONDITIONS

A. **RIGHTS AND DUTIES IN CASE OF LOSS**

1. **What to do in Case of Bodily Injury or Property Damage:**

In case of an accident or **occurrence**, the **insured** must perform the following duties that apply. You are obligated to see that these duties are performed:

a. Give written notice to us or our agent as soon as is practical, which sets forth:

(1) the identity of the policy and the **insured**;

(2) reasonably available information on the time, place and circumstances of the accident or **occurrence**; and

(3) names and addresses of any claimants and witnesses;

b. Promptly forward to us every notice, demand, summons, process or other legal papers relating to the accident or **occurrence**;

c. Cooperate with us and assist us in any matter relating to a claim or suit. Your duty to cooperate with us includes, but is not limited to, a duty to submit to examinations under oath by any person named by us concerning

5194

matters relating both to circumstances surrounding a claim or **occurrence** and with respect to any matter affecting an actual or potential coverage dispute.  Your duty to cooperate continues and does not cease until both claims by third parties and coverage disputes have been resolved;

d.   At our request, submit to examination under oath, as often as we require, while not in the presence of any other **insured**, and sign the same;

e.   At our request, assist in:

(1)  making settlement;

(2)  the enforcement of any right of contribution or indemnity against any person or organization who may be liable to any **insured**;

(3)  the conduct of suits and attend hearings and trials; and

(4)  securing and giving evidence and obtaining the attendance of witnesses.

f.   An **insured** will not, except at the **insured's** own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the **bodily injury**.

2.   **Duties of an Injured Person - Premises Medical Payments**

The injured person or someone acting for the injured person will:

a.   Give us written proof of claim, under oath if required, as soon as is practical; and

b.   Authorize us to obtain copies of medical reports and records.

The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

B.   **Severability of Insurance**

This insurance applies separately to each **insured**.  This condition will not increase our Limit of Liability for any one **occurrence**.

C.   **Suit Against Us**

No action may be brought against us unless there has been full compliance with all the policy provisions.

No one will have the right to join us as a party to any action against an **insured**. Also, no action with respect to Premises Liability Coverage can be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

D.   **Bankruptcy**

Bankruptcy or insolvency of an **insured** will not relieve us of our obligations under this policy for the period of time your premium was paid.

E.   **Other Insurance - Premises Liability Coverage**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the Limits of Liability that apply in this policy.

F.   **Payment of Claim - Premises Medical Payments Coverage**

Payment under this coverage is not an admission of liability by an **insured** or us.

G.   **Inspection**

We shall be permitted but not obligated to inspect your property at any time.  Our inspection shall not constitute an undertaking to determine or warrant your property is:

a.   safe or healthful; or

b.   in compliance with any law.

All other provisions of this policy apply.

5195

# IMPORTANT NOTICE - PENNSYLVANIA

### Surcharge Disclosure Plan

**Dwelling Type Surcharge**

The following surcharge will apply to your policy if the insured property is a Three or Four Multi-Family Unit or Row/Town Home.

**Two,Three and Four Multi-Family Unit** – A 21% surcharge will be applied on a two family unit; a 50% surcharge will be applied to a three family unit; a 60% surcharge will be applied to a four family unit.

**Row/Town Home** - A 20% surcharge will be applied for residences where more than two units are connected by a common wall to the other dwellings/units not owned by our insured. The interior and exterior walls must be owned by the insured and should not be considered a condominum. The surcharge still applies to the end units of row homes/town homes.

**Supplemental Heating Device** - A $40.00 surcharge will be applied to Dwellings equipped with a supplemental heating device that was not installed by a licensed contractor or heating device manufacturer. A supplemental heating device is defined as a wood, coal or pellet burning stove, space heater, and any other heating device that is not centralized.

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF THE POLICY.  PLEASE READ IT CAREFULLY

# BUILDER'S RISK
# RENOVATION AND / OR NEW CONSTRUCTION COVERAGE FORM
# FOR BASIC DWELLING POLICY ENDORSEMENT - PENNSYLVANIA

We will provide this insurance if "Builder's Risk" is shown in the Declarations.

## SECTION I - PROPERTY COVERAGE

## COVERAGE A - DWELLING

**COVERAGE A - Dwelling**, paragraph 1., is deleted and replaced with:

1.  the dwelling on the Described Location shown in the Declarations, used principally for dwelling purposes, including structures attached to the dwelling.  Covered Property also includes the following property:

    a.  **renovations** -  meaning the value of improvements, alterations or repairs to buildings or structures under renovation.

    b.  **dwellings under construction** - meaning dwelling at the Described Location shown in the Declarations, while it is under construction.  The dwelling being constructed must be intended principally for dwelling purposes when completed.  Structures attached to the dwelling are considered part of the dwelling.

    Provided such property is intended to be permanently located in or on the building or structure described in the Declarations or within 100 feet of its premises.

The following coverages are deleted for dwellings under construction:

**COVERAGE D - Fair Rental Value** is deleted in its entirety.

## OTHER COVERAGES
The following Other Coverages are deleted for dwellings under construction:

3.  **Improvements, Alterations and Additions**
4.  **World-Wide Coverage**
5.  **Rental Value**

Item 7., **Property Removed**,  is deleted for dwellings under construction and replaced with:

7.  **Property Removed**.  We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured against and for no more than 30 days while removed.

The following Item 9., **Temporary Structures, Scaffolding and Construction Forms**,  is added to the policy:

9.  **Temporary Structures, Scaffolding and Construction Forms**.

    if not covered by other insurance, temporary structures built or assembled on site, including cribbing, scaffolding and construction forms.

    a.  We will pay for direct loss which is caused by or results from a covered peril under this policy, to scaffolding, construction forms and temporary structures, but only while they are on the Described Location shown in the Declarations.

DBR37 (02/12)

5196

    b.   We will also pay for the cost of re-erection of the scaffold if the loss of the scaffolding is caused by or results from a covered peril. This is not additional coverage and the most we will pay for the re-erection of scaffolding is $5,000. The applicable policy deductible applies.

The following item 10., **Theft of Building Materials and Supplies**, is added to the policy:

10. **Theft of Building Materials and Supplies**.

    a.   We will pay for loss that is caused by theft to building materials and supplies that are:

      (1)  Owned by you or others;

      (2)  In your care, custody or control; and

      (3)  Located in or on the building described in the Declarations, or within 100 feet of its premises.

    b.   The most we will pay for loss under this Other Coverage is $5,000 at each described premises. Our payment for loss of property to others will be for the account of the owner of the property.

## CONDITIONS

The following Conditions are deleted for dwellings under construction and replaced with:

1.   **Policy Period**. We will cover loss from the time when you are legally responsible for the property on or after the effective date of the policy if all other conditions are met. Coverage will end at the earliest of the following:

    a.   The policy expires or is cancelled
    b.   Your interest in the property ceases
    c.   You abandon construction with no intention to complete it

5.   **Loss Settlement**. In the event of a loss, the value of the property will be determined as of the time of the loss.

The most we will pay for any loss that pertains to the Coverage A is the market value of the property prior to the loss less land value which cannot exceed the Coverage A amount.

The market value of the property will be the lowest of the following:

    a.   The amount to replace or repair the structure to the same point of completion that had been achieved immediately before the loss less depreciation.
    b.   The amount a prudent person would pay to purchase the dwelling less any land value prior to the loss occurring.

Partial losses will be settled on the lowest of the following:

    a.   Market value of the dwelling less land value as determined above.
    b.   The amount to replace or repair the dwelling or building materials that have not yet been installed with commonly used building materials less depreciation.

## SECTION II - LIABILITY COVERAGE

When a Premium for Premises Liability Coverage is shown in the Declarations, the following Items B.10 and B.11 are added to the Premises Liability Endorsement as additional Exclusions:

B.10. Independent Contractors

This insurance does not apply and we have no duty to defend or investigate any claim, suit or demand alleging "bodily injury", including psychological injury "personal injury", "advertising injury", "property damage" or medical payments arising from operations performed for "you" or on "your" behalf, by any independent contractor or sub-contractor of yours, unless such contractor, has in force general liability coverage including products completed operations hazard and contractual liability coverage with limits equal to the limits on this policy and on which you are named as a additional insured.

B.11. Independent Contractors

This insurance does not apply and we have no duty to defend or investigate any claim, suit or demand alleging "bodily injury", or medical expenses sustained by any independent contractor and / or any "employee: of an independent contractor contracted by "you" or on Employee Accident Policy or Non-subscriber Legal Liability Policy in force to cover such "employee" injuries.

These exclusions apply:

1. Whether the insured may be liable as an employer or in any other capacity;
2. To any obligation to share damages with or repay someone else who must pay damages of the injury; or
3. to liability assumed by the insured under any "insured contract"

5197

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF THE POLICY.  PLEASE READ IT CAREFULLY.

## CONDEMNATION ENDORSEMENT - PENNSYLVANIA

We do not provide coverage under this policy if, prior to the date of a covered loss, the dwelling is declared condemned pursuant to:

1. local;
2. city;
3. state;
4. federal;

or other governmental regulation.

Upon date of condemnation, coverage will cease.

All other provisions of this policy apply.

DPC37 (03/12)                                                                    Page 1 of 1

# IMPORTANT NOTICE - PENNSYLVANIA

### FAIR Plan Act

As provided in Act 233; you may be eligible for coverage through the Pennsylvania state FAIR Plan and you can inquire at Insurance Placement Facility of Pennsylvania 190 N. Independence Mall West, Suite 301, Philadelphia, PA 19106- 1554, or by calling (800) 462-4972 or (215) 629-8800.

5198

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF THE POLICY.  PLEASE READ IT CAREFULLY.

## PREMISES LIABILITY
## SWIMMING POOL SLIDE AND DIVING BOARD EXCLUSION - PENNSYLVANIA

### IV.  EXCLUSIONS

The following Exclusion is added:

**Premises Liability** and **Premises Medical Payments** do not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any swimming pool when such **bodily injury** or **property damage** results from the use of:

a.   one or more slides; and/or

b.   one or more diving boards attached to the swimming pool.

All other provisions of this policy apply.

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF THE POLICY.
PLEASE READ IT CAREFULLY.

# PREMISES LIABILITY
# EXCLUSION OF UNDERGROUND STORAGE TANK INCIDENTS
# PENNSYLVANIA

## IV.  EXCLUSIONS

The following Exclusion is added:

This insurance does not apply to "bodily injury", "property damage", "environmental damage", or to clean-up costs if applicable, caused by "underground storage tank incidents".

## VI.  DEFINITIONS

The following Definitions are added:

"Environmental damage" means the injurious presence in or upon land, the atmosphere, or any watercourse or body of water of solid, liquid, gaseous or thermal contaminants, irritants or pollutants.

"Underground storage tank" means any petroleum underground storage tank not excluded or exempted from the definition of underground storage tank under section 6991 of the Hazardous and Solid Waste Amendments of 1984, including any attached underground pumps and piping, if such tank is owned or operated by you.

"Underground storage tank incident" means any spilling, leaking, emitting, discharging, escaping, leaching or disposing of petroleum from an "underground storage tank" into ground water, surface water or subsurface soils.

All other provisions of this policy apply.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1994

S199

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF THE POLICY.
PLEASE READ IT CAREFULLY.

# DWELLING PROPERTY
## VACANCY PERMISSION - PENNSYLVANIA

We grant permission for your dwelling to be vacant during the policy period, subject to the following changes to your policy:

### COVERAGES

If coverage is shown for Residence Burglary on the Declarations, Item B. under Exclusions and the Special Condition, Vacancy or Unoccupancy, is deleted from Form **S1B37**, Residence Burglary.

### PERILS INSURED AGAINST

Under Item 10., **Vandalism or malicious mischief**, Paragraph c. is deleted.

All other provisions of this policy apply.

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF THE POLICY.
PLEASE READ IT CAREFULLY.

# DWELLING PROPERTY
# CRIMINAL ACTS EXCLUSION - PENNSYLVANIA

### GENERAL EXCLUSIONS

The following Exclusion **A.9.** is added:

**Criminal Acts**, meaning any loss resulting from the criminal acts of any insured person, including tenants and/or their relatives, on the Described Location.

All other provisions of this policy apply.

5200

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF THE POLICY.
PLEASE READ IT CAREFULLY.

# DWELLING PROPERTY
# FRAUD WARNING - PENNSYLVANIA

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects the person to criminal and civil penalties.

# DWELLING PROPERTY
## GENERAL CHANGE - PENNSYLVANIA

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY NUMBER
AND IS EFFECTIVE  (12:01 A.M. STANDARD TIME)

CHANGE OF NAME
INSURED           Name
(   )              Address

ADDRESS CHANGE
(   )              New Address

                  Description of Home
CHANGE OF HOME    Year                        Make/Model
(   )      Serial No.                         Length          Width
ADDED HOME        Liability Limit
(   )      Premium $                          Add'l. (   )    Return (   )

INCREASED LIMITS  Description of added Coverages and Liability Limits
OR           Coverages                    Liability Limits    Additional Premium
ADDITIONAL
COVERAGES
(   )

REDUCED LIMITS    Description of Eliminated or Reduced Coverage
OR           Coverages                    Liability Limits    Return Premium
COVERAGE
ELIMINATION
(   )

OTHER
(   )

                                                            ADJ.
            TERM-PREM  COMP  COLL  VSI  CPL  P.D.  STRUCT.
            TOTAL

PREMIUM
COMPUTATION
(   )

All other provisions of this policy apply.

DATE ISSUED                          AUTHORIZED SIGNATURE

S1X37 (05/05)                                        Page 1 of 1

5201

II

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF THE POLICY.
PLEASE READ IT CAREFULLY.

# DWELLING PROPERTY
# CANCELLATION AND NON-RENEWAL
# PENNSYLVANIA

## CONDITIONS

Item 17., **Cancellation** is deleted and replaced by the following:

a.   You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect.

b.   We may cancel this policy subject to the provisions of this condition by notifying you in writing of the date cancellation takes effect and the reason for cancellation. This cancellation notice may be delivered to or mailed to you at the mailing address known to us; if mailed, it will be by registered or first class mail.

Proof of mailing will be sufficient proof of notice.

(1)   When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 30 days before the date cancellation takes effect.

(2)   When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons:

(a)   you have made a material misrepresentation which affects the insurability of the risk.  Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

(b)   you have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit.  Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

(c)   a condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period.  Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

(d)   loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies.  Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

(e)   material failure to comply with policy terms, conditions or contractual duties.  Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2003

SDT37 (05/05)

(f)   other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by us.

c.   If this policy is cancelled, we will send you any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If you cancel, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

Item 18., **Non-Renewal**, is deleted and replaced by the following:

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to you at least 60 days before the expiration of the policy.

The following Item 26., **Increase In Premium**, is added:

If we increase your renewal premium, we will mail or deliver to you:

a.   written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase; and

b.   an estimate of the increase at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to you at the last mailing address known to us. If notice is mailed, it will be by registered or first class mail.

All other provisions of this policy apply.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2003

// CLE            POL                                                5178



American
**MODERN**    AMERICAN MODERN SELECT INSURANCE COMPANY

Insured Name:
CAPITAL FLIP LLC BRAD SOMMER
Date Prepared:  March 16, 2018
**POLICY NUMBER:  085 004 853 7190**

BROKER 986950:
JOHN JOSEPH SUPPA
2520 MATTERHORN DR
WEXFORD PA 15090

N085  039595  0048537190  37  WEB  DW
CAPITAL FLIP LLC BRAD SOMMER
6 MARKET SQ
PITTSBURGH PA 15222

Dear Customer,

Thank you for choosing American Modern Select Insurance Company and JOHN JOSEPH SUPPA for your DWELLING insurance needs. I am writing to provide you with your insurance policy and declarations page. Please review the information carefully, and keep the documents in your records. The premium for your policy is $773.00. Thank you for paying in advance of your due date.

You can count on us to continue providing the kind of protection and service you expect from your insurance provider.  If you have questions about this insurance policy, please contact JOHN JOSEPH SUPPA AT (412) 238-8200.

Again, thank you for choosing American Modern Select Insurance Company. We appreciate your business... and your trust!

Very truly yours,

President

YOU WILL SOON RECEIVE YOUR BILLING PAYMENT SCHEDULE WHICH WILL INDICATE THE DATE AND AMOUNT THAT WILL BE DEDUCTED FROM YOUR BANK ACCOUNT EACH MONTH.

5179

# PENNSYLVANIA FRAUD NOTICE

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

5180

# IMPORTANT NOTICE
## BILLING REFERENCE INFORMATION

### Payment Services

- Online Services www.amig.com
- Automated Customer Service and Direct Customer Care:  **1-800-543-2644**
- Agents Office: **(412) 238-8200**
- Company Addresses
  **Standard Mailing:**
  American Modern Insurance Group
  PO BOX 740429
  Cincinnati, Ohio 45274-0429

  **Overnight Mailing:**
  American Modern Insurance Group
  Attn: Accounting Dept.
  7000 Midland Blvd.
  Amelia, Ohio 45102

### Installment Payment Plan Options
- Payment plan options are flexible, and vary by product.  Your agent can advise which options are available for your account.
- Electronic Funds Transfer (EFT) is available for monthly automatic withdrawals from your checking or savings account or credit card. You may choose your payment withdrawal day of the month.

### How You Pay
- Electronic (one time) payments can be made from a checking or savings account, debit card, and the following credit cards:  Visa, MasterCard, Discover and American Express.
- Paper payments can be made by check or money orders.  When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic funds transfer from your account or to use payment as a check transaction.
- Payments can be made online Monday through Friday from 7:00am to 12:00am EST, and Saturday and Sunday from 8:00am to 9:00pm EST.

### Charges
- **Service Charge** of $1.00 applies for each installment, except for annual payment plans.
- **Late Charge** of $5.00 may be assessed, if payment is received after due date and a notice of cancellation is generated.
- **Reinstatement Charge** of $5.00 will be assessed if the company elects to rewrite or reinstate your policy when the amount due is paid after the cancellation date.
- Reinstatement is not guaranteed and may or may not include a gap in coverage.
- **Non Sufficient Funds (NSF) Charge** of $20.00 will be assessed for any payments returned from the issuing bank due to unavailable funds.

IN150 (06/12)

Page 1 of 1

5181

# IMPORTANT NOTICE TO POLICYHOLDERS
## FLOOD AND EARTHQUAKE EXCLUSION

This notice is to advise you that your policy excludes coverage for damage due to Flood or Earthquake, unless you purchase coverage for these perils.

Flood includes surface water, waves, tidal water, tidal waves, storm surge, wind driven water (including hurricane winds), or any other overflow of water, and spray from any of these events. To be covered for such a loss, you will have to obtain a separate flood insurance policy through the National Flood Insurance Program (NFIP).

Earthquake includes land shock waves or tremors before, during or after a volcanic eruption. To be covered for such a loss, you will have to obtain a separate endorsement, which may be available through our company.

Your agent can provide you with information on obtaining flood insurance through the National Flood Insurance Program, or to obtain separate earthquake coverage.

You can learn more about the National Flood Insurance Program at www.floodsmart.gov or by calling (888) 379-9531.

IN614 (04/09)

Page 1 of 1

 **American Modern Select Insurance Company**

CAPITAL FLIP LLC BRAD SOMMER                                      May 06, 2018
6 Market Sq
Pittsburgh, Pennsylvania 15222-1813

RE  **Insured:** CAPITAL FLIP LLC BRAD          **Cause of Loss:** Injury or Damage caused by Animal
:   SOMMER                                      **Date of Loss:** April 24, 2018
    **Claim Number:** 430126AA
    **Policy Number:** 0048537190

Dear CAPITAL FLIP LLC BRAD SOMMER:

We have reviewed your claim concerning the damage caused to the attic and exterior of your property,
located at 1419 Iroquois Drive, Pittsburgh, PA 15205. In my inspection of the property, I could find no
covered damage to the property. As such, your loss must respectfully be denied.

Please note that your **DWELLING PROPERTY BASIC FORM DP-1** policy lists on page 3 of 8, entitled
**PERILS INSURED AGAINST,** the named perils covered by your policy. This section states:

**PERILS INSURED AGAINST**

Unless the loss is excluded in the General Exclusions, we insure for direct physical loss to the property
covered caused by:

    1.    **Fire or lightning.**

    2.a.    **Internal Explosion,** meaning explosion occurring in the dwelling or other structure
    covered on the Described Location or in a structure containing personal property
    covered.

    b.    Explosion does not mean:

        **1.** electric arcing;
        **2.** breakage of water pipes; or
        **3.** breakage or operation of pressure relief devices.

    c.    This peril does not include loss by explosion of steam boilers, or steam pipes, if owned
    or leased by you or operated under your control.

When a Premium for Extended Coverage is shown in the Declarations, Perils **3.** through **9.** are
made part of Perils Insured Against.



EXECUTIVE OFFICES / P.O. BOX 5323 / CINCINNATI, OHIO 45201-5323 / TEL. (513) 943-7200

3.      **Windstorm or hail.**

This peril does not include loss:

a.  to the inside of a building or the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening;

b.  to the following property when outside of the building:
    **(1)** awnings, signs, radio or television antennas or aerials including lead-in wiring, masts or towers; or
    **(2)** canoes and rowboats.

4.      **Explosion.**

a.      This peril does not include loss by explosion of steam boilers or steam pipes, if owned or leased by you or operated under your control.

b.      Explosion does not mean:

    **(1)** electric arcing;
    **(2)** breakage of water pipes; or
    **(3)** breakage or operation of pressure relief devices.

c.      This peril replaces Peril **2**.

5.      **Riot or civil commotion.**

6.      **Aircraft...**

7.      **Vehicles...**

8.      **Smoke...**

9       **Volcanic Eruption...**

When a Premium for Vandalism or Malicious Mischief is shown in the Declarations, the following is made part of **PERILS INSURED AGAINST**.

10.     **Vandalism or malicious mischief.** This peril does not include loss:

a. to glass or safety glazing material constituting a part of the building other than glass building blocks;

b. by pilferage, theft, burglary or larceny, but we will be liable for damage to the building covered caused by burglars; or

c. to property on the Described Location if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

EXECUTIVE OFFICES / P.O. BOX 5323 / CINCINNATI, OHIO 45201-5323 / TEL. (513) 943-7200

Since your loss was the result of an animal or animals damaging the dwelling and this is not covered in the list of perils, as stated above, there is no coverage under your policy for the loss. Therefore, your claim is respectfully denied.

By setting forth the basis of this denial, American Modern Select Insurance Company expressly reserves all rights and defenses available to it under the Policy and applicable law. The specificity of this denial does not waive any rights, or any other applicable Policy provisions or law. Additional policy provisions within the Policy and/or applicable law may affect coverage for the Claim and American Modern Select Insurance Company does not waive such provisions or applicable law or its rights to otherwise alter or amend its coverage analysis for any reason.

If you believe there is any additional information which we have not been provided that may affect our position or if our understanding of the facts is in error, kindly bring it to our attention and we will be pleased to review it.  However, you should not construe our willingness to consider any additional information you may wish to provide as anything other than our desire to be fair and open-minded. This declination is and remains our final position unless we expressly advise you to the contrary.

I wish that I could be of greater assistance to you. Please contact me should you have any questions regarding the company's position.


Sincerely,
Bryan Langford
Adjuster

American Modern Select Insurance Company
Phone: 866-637-3610
Fax: 513-388-5930
Email: blangford@amig.com


 **Online Services**

The paperless way for customers to view insurance documents any time, any place.
Visit **amig.com** to learn more


*Note: In addressing you at this time American Modern Select Insurance Company specifically reserves the right to deny and defend against this claim for the above referenced reason(s) or for any other lawful reason. No waiver or estoppel is intended or inferred.*

# ZIMMER KUNZ

310 GRANT STREET, SUITE 3000
PITTSBURGH, PA 15219

(412) 281-8000
FAX (412) 281-1765

## PROFESSIONAL LIMITED LIABILITY COMPANY
ATTORNEYS AT LAW

MORGANTOWN OFFICE:
1280 SUNCREST TOWNE CENTRE
MORGANTOWN, WV 26505
(304) 292-8531
FAX (304) 292-7529

GREENSBURG OFFICE:
132 SOUTH MAIN STREET, SUITE 400
GREENSBURG, PA 15601
(724) 836-5400
FAX (724) 836-5149

GEORGE N. STEWART (PA & WV)
JONI M. MANGINO (PA, NY, OH & WV)
JOSEPH W. SELEP (PA & WV)
JOHN W. ZOTTER (PA & OH)
JEFFREY A. RAMALEY (PA & OH)
DANIEL E. KRAUTH (PA)
CHRISTOPHER T. YOSKOSKY (PA)
SHARON Z. HALL (PA & WV)
JOSEPH F. BUTCHER (PA)
MATTHEW G. BRENEMAN (PA & WV)

RYAN A. ZELI (PA, NY, OH & WV)
DARA A. DeCOURCY (PA & WV)
MACEL E. RHODES (WV)
KERRI A. SHIMBORSKE-ABEL (PA & WV)
JOSEPH R. PETRINA (PA & WV)
GREGORY C. SCHEURING (PA & WV)
SAMANTHA QUINN STEWART (PA)
DAVID F. RYAN (PA, OH & WV)
DANIEL J. CUDDY (PA)
JOHN J. GAUGHAN (PA)

AARON H. WEISS (PA & WV)
BRIAN M. LUCOT (PA, OH & WV)
ADAM S. AUCHEY (PA & WV)
FRANCESCA M. MILLER (PA & WV)
NICHOLAS R. JIMENEZ (PA & NJ)

OF COUNSEL:
CHRISTIAN W. WRABLEY (PA & WV)
HARRY J. ZIMMER

E-Mail:ramaley@zklaw.com
Direct Dial No.: (412) 434-5408

September 7, 2018

Capital Flip LLC
ATTN: Brad Sommer
6 Market Square
Pittsburgh, PA 15222

   **Re: Date of Loss: 4/24/2018**

Dear Mr. Sommer:

  You have submitted a claim under a policy of insurance issued by American Modern Select Insurance Company to Capital Flip LLC, Brad Sommer.  Previously, a representative of the carrier had come to the location, inspected it and took photographs.

  You informed a representative of my client that damage was caused by a wild animal to the attic and exterior of the property, located at 1419 Iroquois Drive, Pittsburgh, PA 15205.

  As conveyed to you by letter dated May 6, 2018, the insurance carrier has concluded that there is no coverage under the policy for damage caused by a wild animal.

  The policy insures against direct physical loss to covered property caused by, inter alia, vandalism or malicious mischief.  It is my understanding that you have directed the insurance carrier to the following provision of the policy as a possible basis for coverage for this loss.  The policy provides, in pertinent part, as follows:

>   Unless the loss is excluded in the GENERAL EXCLUSIONS, we
> Insure for direct physical loss to the property covered caused by...
> **Vandalism or malicious mischief.**  This peril does not include loss:
>
>  a.  to glass or safety glazing material constituting a part of the
>    building other than glass building blocks;
>  b.  by pilferage, theft, burglary or larceny, but we will be liable for

01648998.DOC 3808-0083



EXHIBIT

C

damage to the building covered caused by burglars; or

c.  to property on the Described Location if the dwelling has been
vacant for more than 30 consecutive days immediately before
the loss.  A dwelling being constructed is not considered vacant.

American Modern granted permission for the dwelling to be vacant during the policy
period and, therefore, deleted sub-paragraph c from the vandalism or malicious mischief
provision in the policy.  However, all other provisions of the policy apply.

We have been unable to locate any case law in Pennsylvania concerning whether animal
damage is covered under the vandalism/malicious mischief provision in an insurance policy.
However, courts in New Mexico, New York and Alabama have held that animal damage is not
covered under the vandalism or malicious mischief provision of a policy.

Although there is no case law in Pennsylvania concerning whether animal damage is
covered under the vandalism or malicious mischief provision, Pennsylvania courts have noted
that vandalism and malicious mischief, as construed in insurance policies, require proof that the
act was done willfully and intentionally.  A search for other case law in this area has failed to
disclose a case in which similar language has been construed under similar facts to reach the
conclusion that there would be coverage for a loss caused by a wild animal.

The language, on its face, is unambiguous.  The standard dictionary definition of
vandalism, as discussed in the cases decided outside of Pennsylvania, and referenced above,
leads to the conclusion that a wild animal cannot form the intent necessary to commit vandalism.
Nor would it appear that a wild animal could commit malicious mischief.

Under a plain reading of the policy, vandalism requires proof of an actual purpose, design
or intent to injure, damage or destroy.  Therefore, it would not apply to damage caused by a wild
animal.

Should you have any questions or concerns in this matter, please do not hesitate to
contact me.

Very truly yours,

JEFFREY A. RAMALEY

JAR:ala