IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAPITAL FLIP, LLC,<br><br>        *Plaintiff*,<br><br>v.<br><br>AMERICAN MODERN SELECT<br>INSURANCE COMPANY,<br><br>        *Defendant*. | Civil Action No. 2:19-cv-180<br><br>Hon. William S. Stickman, IV |

### **OPINION**

WILLIAM S. STICKMAN, IV
UNITED STATES DISTRICT JUDGE

    Plaintiff, Capital Flip, LLC ("Capital Flip"), brought this action asserting claims for breach of contract and insurance bad faith arising out of Defendant American Modern Select Insurance Company's ("American Modern") denial of insurance coverage for substantial property damage caused by racoons. Capital Flip argues that the raccoons engaged in "vandalism and malicious mischief" which is unquestionably covered by the insurance policy. Defendant counters that raccoons cannot, as a matter of law, engage in vandalism or perpetrate mischief—much less with malice. The Court agrees and, as set forth below, finds that Plaintiff's claims fail as a matter of law. Therefore, Defendant's Motion to Dismiss, ECF No. 3, is granted.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The relevant facts are straightforward and are not in dispute.[1] Capital Flip was the owner of a dwelling located in the Pittsburgh area. In April of 2018, Capital Flip discovered that racoons had somehow entered the dwelling and caused a substantial amount of damage to the interior. The property was insured by a Dwelling Policy issued by American Modern. *See* Plaintiff's Complaint, ¶¶3-5.

The Dwelling Policy offered coverage for a limited number of "perils insured against." *See* Pl.'s Compl., Exhibit A. The only insured peril relevant to this case covers losses arising out of "vandalism or malicious mischief." The Policy provides, in relevant part:

> Unless the loss is excluded in the **GENERAL EXCLUSIONS**, we insure for direct physical loss to the property covered caused by:
>
> * * *
>
> 10. **Vandalism or malicious mischief.** This peril does not include loss:
>
>     a.    to glass or safety glazing material constituting a part of the building other than glass blocks;
>     b.    by pilferage, theft, burglary or larceny, but we will be liable for damage to the building covered caused by burglars; or
>     c.    to property on the Described Location if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.[2]

*See id.*, Ex. A, pp. 3-4.

Capital Flip made a claim on the Policy, contending that the damage to its property was a result of "vandalism or malicious mischief" by the culprit racoon. American Modern denied the

---

[1] In deciding a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), a District Court may only look to the facts alleged in the Complaint and attached documents. *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1424-25 (3d. Cir. 1997).

[2] American Modern granted permission for the property to be vacant during the policy period. As such, subsection c is inapplicable. Pl.'s Compl., Ex. B p. 2).

claim by a May 6, 2018, letter, which stated; "[s]ince your loss was the result of an animal or animals damaging the dwelling and this is not covered in the list of perils, as stated above, there is no coverage under your policy for the loss. Therefore, your claim is respectfully denied." *See id.*, Ex. B, p. 2.

On December 3, 2018, Capital Flip filed the instant Complaint in the Court of Common Pleas of Allegheny County, Pennsylvania, asserting claims of breach of contract and insurance bad faith. On February 19, 2019, American Modern removed the Complaint to this Court, asserting diversity jurisdiction under 28 U.S.C. §1332.[3] (Notice of Removal, ECF No. 1).

American Modern filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Capital Flip's claims fail as a matter of law because its denial of coverage was warranted. Specifically, American Modern contends that raccoons cannot commit vandalism or engage in malicious mischief and, therefore, there was no coverage upon which to premise a claim for breach of contract or for insurance bad faith.

Capital Flip counters that the Policy is ambiguous because it does not specifically define "vandalism" or "malicious mischief." It contends that, because those terms are undefined, they *may* include damage caused by racoons and/or other animals. At the very least, Plaintiff argues, the question of whether an animal can engage in "vandalism" or "malicious mischief" is one of

---

[3] Plaintiff is a Pennsylvania Limited Liability Company and all of its members are alleged to be citizens of the Commonwealth. *See* Notice of Removal ¶ 6. American Modern is an Ohio corporation with a principle place of business in Ohio. *Id.* at ¶5. As to the jurisdictional amount, Capital Flip avers that its breach of contract claim and bad faith claim *both* exceed fifty thousand dollars. *Id.* at ¶ 14. "The general rule is that claims brought by a single plaintiff against a single defendant can be aggregated when calculating the amount in controversy, regardless of whether the claims are related to each other." *Suber v. Chrysler Corp.* 104 F.3d 578, 588 (3d. Cir. 1997). Courts have applied the aggregation rule to cases where a plaintiff asserted claims for breach of contract and insurance bad faith. *Ketz v. Progressive Northern Insurance Co.*, 2007 WL 1726514 (M.D. Pa. June 14, 2007). American Modern has, therefore, satisfied its burden of showing that this Court has jurisdiction under 28 U.S.C. §1332.

first impression in Pennsylvania and, therefore, does not lend itself to disposition on a motion to dismiss.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d. Cir. 1993). "[W]hen presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First the factual and legal elements of a claim should be separated. The District Court must accept all of the complainant's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d.Cir. 2009).

## III. ANALYSIS

The Court finds that Capital Flip has failed to plead a plausible claim either for breach of contract or for insurance bad faith. Both of those claims hinge on a finding that Capital Flip was entitled to coverage under the Dwelling Policy at issue. This finding would require this Court to determine that the acts of animals—the raccoons—can reasonably be understood to constitute "vandalism or malicious mischief" as used in the insurance policy. The principles of contract interpretation preclude such a finding.

At its heart, this case requires a simple interpretation of the Dwelling Policy purchased by Capital Flip. Insurance policies are considered contracts and contract interpretation is generally a question of law requiring ordinary principles of contract law. *See USX Corp. v. Adriatic Insurance Co.*, 99 F. Supp. 2d 593 (W.D.Pa. 2000), *Transamerican Office Furniture v. Travelers*

*Property & Cas. Co.*, 222 F. Supp. 2d 689, 691 (E.D.Pa. 2002). The Pennsylvania Supreme Court[4] has outlined the role of a court in interpreting an insurance policy:

> In interpreting an insurance policy, a court must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, the court must give effect to the language of the contract. However, if the policy provision is ambiguous, the policy provision must be construed in favor of the insured and against the insurer as the drafter of the instrument. *Bateman v. Motorists Mutual Ins. Co.*, 590 A.2d 281, 283 (1991) (citing *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 469 A.2d 563 (1983)). Also, the words of the insurance policy must be construed in their natural, plain and ordinary sense. *Easton v. Washington County Ins. Co.*, 137 A.2d 332, 335 (1958). Moreover, an insurance policy, like every other written contract, must be read in its entirety and the intent of the policy is gathered from consideration of the entire instrument. *Smith v. Cassida*, 169 A.2d 539, 541 (1961).

*Riccio v. Am. Republic Ins. Co.*, 705 A.2d 422, 426 (Pa. 1997).

The Court finds that the relevant portion of the Dwelling Policy is clear and unambiguous. Section 10 of the Policy clearly and unequivocally states that it covers direct physical loss to the property caused by "vandalism or malicious mischief." A contractual provision is ambiguous if "it is reasonably susceptible to different constructions and capable of being understood in more than one sense." *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 558 (3d. Cir. 2008). Moreover, "the provisions of the contract must be read as a whole, and not in a vacuum." *Heebner v. Nationwide Insurance Enterprise*, 818 F.Supp. 2d 853, 857 (E.D. Pa. 2011). Read in the context of the Dwelling Policy, "vandalism" and "malicious mischief" are not ambiguous—especially not with regard to whether they can be construed to encompass the conduct of animals.

Capital Flip argues that the terms "vandalism" and "malicious mischief" are ambiguous because they are not defined in the Dwelling Policy. There is no merit to this contention. It is

---

[4] As a federal court sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d. Cir. 2000) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)).

5

well-established that a term is not ambiguous merely because an insurance policy does not provide a specific definition. *Id.* at 857 (E.D. Pa. 2011), citing *Telecomm. Network Design v. Brethren Mut. Ins. Co.* 5 A.3d 331, 336-37 (Pa. Super. 2010); *Wall Rose Mutual Ins. Co. v. Manross*, 939 A.2d 958, 964 (Pa. Super. 2007). Rather, where a term is not specifically defined, courts "apply the common law definition historically used by the courts of this Commonwealth and apply it to the facts of the case." *Manross*, 939 A.2d at 965. This is consistent with the general canon of contract interpretation that "words of 'common usage' in an insurance policy are to be construed in their natural, plain and ordinary sense, and a court may inform its understanding of these terms by considering their dictionary definitions." *Id.* at 962.

The absence of a definition of "vandalism" and "malicious mischief" does not render the terms ambiguous. On the contrary, both their common dictionary definition and their specific legal usage show that they are inapplicable to animal behavior.

The Oxford Dictionary defines "vandal" as "a person who deliberately destroys or damages property." *Vandal*, OXFORD DICTIONARY OF CURRENT ENGLISH (3d ed. 2008). Likewise, "vandalize" is defined as "[to] deliberately destroy or damage property." *Id.* "Malicious" is defined as "intending or intended to do harm." *Id.* "Mischief" is "playful misbehavior." *Id.* These definitions apply to *deliberate* acts by a *person* which are *intended to do harm*. The common usage of the terms "vandalism" and "malicious mischief" preclude their application to the actions of animals.

The legal usage of those terms confirms, and amplifies, their common usage. According to Black's Law Dictionary, "vandalism" is the "willful or ignorant destruction of public or private property, esp. of artistic, architectural or literary treasures." *Vandism*, BLACK'S LAW DICTIONARY (11th ed. 2000). "Malicious mischief" is "the common law misdemeanor of

6

intentionally destroying or damaging another's property." *Id.* Indeed, at common law, "malicious mischief" was a specific offense that Blackstone defined as an "injury to private property" which is committed "either out of a spirit of wanton cruelty, or black and diabolical revenge." 4 WILLIAM BLACKSTONE, COMMENTARIES, Ch. 17, II.

Under the Pennsylvania Crimes Code, the concepts of vandalism and common law malicious mischief are intertwined in the offense of Criminal Mischief. The Code provides:

> **(a) Offense defined.**--A person is guilty of criminal mischief if he:
>
> (1) damages tangible property of another intentionally, recklessly, or by negligence in the employment of fire, explosives, or other dangerous means listed in section 3302(a) of this title (relating to causing or risking catastrophe);
>
> (2) intentionally or recklessly tampers with tangible property of another so as to endanger person or property;
>
> (3) intentionally or recklessly causes another to suffer pecuniary loss by deception or threat;
>
> (4) intentionally defaces or otherwise damages tangible public property or tangible property of another with graffiti by use of any aerosol spray-paint can, broad-tipped indelible marker or similar marking device;
>
> (5) intentionally damages real or personal property of another; or
>
> (6) intentionally defaces personal, private or public property by discharging a paintball gun or paintball marker at that property.

18 Pa.C.S.A. §3304(a). By its very language criminal mischief, like all crimes, requires a human actor. Animals are subject only to the laws of nature, not the Pennsylvania Crimes Code or law governing human conduct.

All of the courts which have examined whether animal damage is included within coverage for vandalism and malicious mischief have declined to interpret those terms to encompass animal behavior and held that, as a matter of law, they can only apply to human

conduct. In *Stack v. Hanover Insurance Co.*, 57 Ala. App. 504 (Ala. App. 1976), the Alabama court rejected the argument that damage caused when a deer crashed through a glass door and caused substantial interior damage before jumping out of a bedroom window resulted from "vandalism or malicious mischief." The court aptly observed that "[a]n animal, such as a deer, to the human mind, and in law, is incapable of forming an intent to commit a wrongful act or to act maliciously. An animal, nonhuman, acts or reacts instinctively without knowledge of right or wrong as defined by man." *Stack*, 57 Ala. App. At 562.

In *Roselli v. Royal Insurance Co.*, 142 Misc.2d 857 (N.Y. Sur. Ct., Monroe County, 1989), the court granted summary judgment in favor of an insurer on the insured's claim that damage caused by a deer resulted from "vandalism or malicious mischief." The court concluded that it "reluctantly concurs with existing legal precedent to the effect that vandalism and/or malicious mischief must be perpetrated by a human actor." *Roselli*, 142 Misc.2d at 858.

In *Montgomery v. United Services Automobile Association*, 118 N.M. 742 (N.M. App. 1994), the Court of Appeals of New Mexico rejected a similar claim for damage caused to the plaintiff's property by a bobcat. The court's analysis focused on the plain and ordinary definition of the term "vandalism" and held that it only refers to intentionally destructive conduct by a human being. In affirming the dismissal of the plaintiff's insurance claim, the appellate court cited to the legally correct, and artistically expressed, decision of the trial court:

> Alas, it is written in the law
> That an animal with the paw
> Does not have the mind
> To do the damage of this kind.
> And so, I'm sorry, the Plaintiff won't get paid.
> That's how the contract was made.
> This policy does not apply
> When the bobcat runs awry.

*Montgomery*, 118 N.M. at 742 n.1 (in relevant part).

This Court agrees with the cases cited above that damage caused by animals—in this case, raccoons—cannot be deemed to have arisen from "vandalism" or "malicious mischief." Both the common and legal usage of those terms presuppose conscious, willful misconduct by a human being. Raccoons and their companions in the animal kingdom cannot formulate the intent needed to engage in "vandalism," "malicious mischief" or any other criminal or actionable conduct. Animals do not have conscious agency and are not subjects of human law. This Court cannot conclude that the parties' intent, as expressed in the plain language of their insurance agreement, was to include within the coverage for "vandalism or malicious mischief" the actions of animals. Rather, the plain meaning of those terms precludes such a finding. As such, the threshold premise for both of Capital Flip's claims—that there is coverage under the Dwelling Policy for the raccoon damage—cannot stand. Without a plausible claim for coverage, Capital Flip cannot maintain an action asserting that American Modern breached the Dwelling Policy and/or engaged in bad faith. Its claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

IV. <u>**CONCLUSION**</u>

For the forgoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss, ECF No. 3, is granted and that Plaintiffs' claims are dismissed with prejudice.